IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

UNITED STATES OF AMERICA,

      PLAINTIFF,

v.                         **CRIMINAL ACTION NO. 2:09-00208**

MARY JANE BOWLING,

      DEFENDANT.

## DEFENDANT'S SENTENCING MEMORANDUM
## AND REQUEST FOR VARIANCE

Defendant, Mary Jane Bowling, by counsel, submits this sentencing memorandum and asks the Court to impose a variance sentence below the United States Sentencing Guidelines (USSG) range, and to impose a sentence that does not require a term of imprisonment. The law requires the Court to "impose a sentence sufficient, but not greater than necessary, to comply with" the statutory purposes of federal sentencing in 18 U.S.C. §3553(a)(2). For the reasons set forth below, this Court can fulfill the statutory mandates by sentencing Ms. Bowling to an alternative sentence that does not include incarceration.

### INTRODUCTION

Ms. Bowling agrees that the probation officer has correctly calculated and applied the sentencing guidelines, including the adjustment for her role in the offense. Ms. Bowling agrees that she abused the trust vested in her by virtue of her position with the State of West Virginia. The sentencing guidelines result in a total offense level of 13 and a sentencing range of 12 to 18 months. Analysis of the statutory principles of §3553(a) demonstrates that the Court should vary below the sentencing guidelines because: (1)

Ms. Bowling did not - subjectively - intend that the State lose any funds or services for which it awarded the grant; (2) Ms. Bowling did not intend personally to benefit; (3) the actual loss to the State of West Virginia was $11,633.69; and (4) defendant's history and personal characteristics. Ms. Bowling did exercise influence to get the Comar grant approved by WorkForce West Virginia (WFWV) and did not affirmatively disclose her son Martin Bowling's employment with Comar. However, Ms. Bowling believed and intended that the Comar grant complied with U.S. Department of Labor (DOL) and WFWV Set-Aside Program objectives and rules, and that Comar would faithfully perform its duties pursuant to the grant. We understand that WFWV does not question whether the purpose of the grant was legitimate. Likewise, we understand that the State does not contend that the activities and functions Comar was to perform pursuant to the grant were not in fact performed, and defendant's superior was aware that Martin Bowling was affiliated with Comar. See Affidavit of Stephen Dailey, ¶ 5(g), attached as Exhibit A hereto.

It now appears that, excepting the concealed $5,000 payments to Martin Bowling and Ms. Gardner, the grant was in fact carried out in accordance with State Set-Aside Program objectives and rules.

Defendant therefore respectfully submits that the gist of her crime was improperly influencing the selection of Comar for the grant, all of which resulted in a loss to WFWV of $11,633.39. In this sense, the offense conduct varies from the more typical fraud and property offenses subject to the provisions of Chapter 2B, U.S. Sentencing Guidelines.

## THE COURT SHOULD IMPOSE A VARIANCE SENTENCE BELOW THE U.S.S.G. SENTENCING RANGE IN ACCORDANCE WITH 18 U.S.C. §3553(a), *BOOKER* AND ITS PROGENY

A.      Section 3553(a) factors.

        The nature and circumstances of the offense. §3553(a)(1).  Defendant has

accepted responsibility for her criminal conduct; the conduct that is described in the

Stipulation of Facts, Exhibit B to plea agreement.     However, Ms. Bowling did not

participate in, nor did she initially know of, the illegal diversion of  $10,000 in payments

masked as consulting fees to her son and house mate; facts she first learned only after a

newspaper reporter made a FOIA request to WFWV. She acknowledges she breached the

trust vested in her by the State of West Virginia.  She resigned her position, cooperated

with the U.S. Attorney's Office, pled guilty and now stands to be sentenced.  Ms. Bowling

did not, however, intend WFWV to award the grant for a bogus or non-existent project, nor

to a project that was inconsistent with the federal and state objectives of the State Set-

Aside Program.  She intended, and believed, that the project would be fully carried out to

achieve the goals of the State Set-Aside Program.

        Steven Dailey, Director of the State-Set-Aside Program and Ms. Bowling's

supervisor, has signed an affidavit filed herewith as Exhibit A.  Mr. Dailey knew that Martin

Bowling was employed by or otherwise was affiliated with Comar - a fact that did not

disqualify Comar from bidding or receiving the State contract for Set-Aside funds.

However, Mr. Dailey and WFWV were not aware that Martin Bowling had been involved

in credit card fraud, and had been charged with or convicted of credit card fraud in the

Circuit Court of Kanawha County.  Mr. Dailey states that had he known those facts, that

Comar would have been disqualified from bidding and contracting on account of its

relationship with Martin Bowling.  Exhibit A, ¶¶ 6, 7 and 9.  Likewise, Ms. Bowling did not

know that Martin Bowling was involved in, or had been charged with, credit card fraud until

3

over seven months after the Comar contract was signed.  Ms. Bowling first learned of Martin's criminal conduct on March 5, 2009, when she was told that Martin had been sentenced to three years in prison.  She then immediately called Mr. Dailey and told him the bad news.[1]

History and personal characteristics of defendant. §3553(a)(1).  Ms. Bowling is 57 years of age and a lifelong resident of West Virginia.  She began working at her father's grocery store in McDowell County when she was in the sixth grade, and  since has worked her entire life.  She obtained bachelors and  masters degrees.  Ms. Bowling raised her son as a single, working mother.  Until this event, Ms. Bowling has led an exemplary life.  From adequate but modest origins she educated herself, worked hard, married, divorced and raised her son.  She worked to the benefit of the public, as a school teacher and a state employee, surely honorable services.  Before this case her record is without blemish.  She paid her taxes.  She has been a positive and contributing member of society.  She always abstained from drugs, and can hardly be described as a social drinker.  She has led a stable life as a solid citizen.

---

[1]Ms. Bowling and Mr. Dailey had attended a meeting in Bridgeport, West Virginia that day and were traveling back to Charleston separately when Mandi Felty's (now Bowling) mother Tracey called Ms. Bowling and told her Martin was going to prison. Ms. Bowling then called Mr. Dailey. Exhibit A, ¶ 9.

Ms. Bowling has since learned the following:  Martin Bowling was first questioned by two Kanawha County Deputy Sheriffs in July 2007, after he picked up movie tickets from a Nitro theater purchased with a false credit card.  In February 2008 Martin received a letter from the Kanawha County Prosecuting Attorney's Office, and thereafter his attorney negotiated a plea agreement providing a recommended sentence of probation.  In July 2008, Martin was indicted by the Kanawha County Grand Jury.  On March 5, 2009, Martin was sentenced to three years prison by Judge Bailey. That was when Ms. Bowling first learned of Martin's criminal activity.  On March 21, 2009, Judge Bailey reduced Martin's sentence.  Reports of Martin's sentencing on March 5, 2009 were reported on the radio.

Ms. Bowling has been active in civic and charitable organizations for many years, including the Special Olympics, the March of Dimes, the American Heart Association, Multiple Sclerosis and the Boy Scouts of America. Defendant served for 28 years (1973-1978; 1980-1987; 1998-2008) as a volunteer for Special Olympics, in various capacities including coaching and fund-raising. She worked for 9 years (1996-1998; 2000-2007) for March of Dimes, as a work-place coordinator and team captain for fund-raising (walking) teams. For Multiple Sclerosis, she volunteered for 8 years (1987-1990; 1998-2003) in fund-raising. She volunteered for 4 years for the Heart Association in fund-raising. She served 5 years as a Traffic Control volunteer for the Charleston Distance Run. She was active in Cub Scouts. For 10 years she was a leader and sponsor of her church's youth group. This charitable work was not simply the gracious and helpful act of writing a check. Rather, Ms. Bowling has invested thousands of hours of her life by personally participating in these good works.

There is no violence related to this case, nor present in her past. We respectfully submit that Ms. Bowling's personal history provides a sufficient and lawful basis for a variance below the Sentencing Guidelines.

As shown in the PSR, Ms. Bowling's personal characteristics prove that she is in the class of persons with the lowest risk of recidivism. These factors include: no criminal history; age (especially over 50); stable employment;[2] education (especially post- high school education); marriage and family (even if divorced); gender (women have lower rates of recidivism than men); and abstinence from drugs. Additionally, offenders sentenced

---

[2]Should defendant not be incarcerated, she will continue to be employed by Carey, Scott, Douglas & Kessler, PLLC.

under fraud and larceny guidelines are shown to be less likely to engage in further criminal conduct than those convicted of other offenses. U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* (May 2004); U.S. Sentencing Commission, *A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score* (Jan. 2005).

Ms. Bowling also is a "true first offender:" *i.e.,* an offender who has no prior arrests or convictions. Although she falls into criminal history category I, as a true first offender, Ms. Bowling should be distinguished from other criminal history category I defendants who have (a) prior arrests but no convictions, (b) a prior conviction that does not count for criminal history points or (c) one criminal history point. As a true first offender, she has no experience with the criminal law or law enforcement. As a true first offender, she is in the class of defendants proven to be the least likely to re-offend. *United States v. Oldani, 2009 WL 1770116* (S.D. W. Va. June 16, 2009) at *pp.* 6-7 (Chambers, J.), *citing,* U.S. Sentencing Commission, *Recidivism and the "First Offender" (*May 2004) at http://www.ussc.gov/publicat/recidivism_firstoffender.pdf. The empirical research demonstrates that this defendant is very unlikely to violate the law ever again.

Mary Jane Bowling's character - her essential goodness - is attested by those who know her well and who have submitted letters for the Court's consideration. She is consistently described as kind, compassionate, concerned for the well-being of others and the community. She is proven to be hard working, professional, a problem-solver and dedicated. The writers portray Mary Jane as thoughtful, ethical and deeply involved in her faith. She is said to be "deeply spiritual." One writer aptly describes her as a "gentle soul."

6

It is clear that she has touched many lives, helping those around her.

In addition to proving Mary Jane's good character and good works, the writers prove a second critical point:  Mary Jane's conduct in this matter was out of character; in a word, aberrant.

After reading these heartfelt expressions of respect and love, and in light of all the facts and circumstances of this case, it appears beyond question that general concepts of justice do not demand a prison sentence.  And likewise, the mandates of federal criminal laws do not require incarceration.[3]

In summary, Ms. Bowling's history and personal characteristics compel the conclusion that a sentence of imprisonment is not necessary.

Purposes of punishment. Section 3553(a)(2): The statute directs the Court to impose a sentence sufficient, but not greater than necessary, to comply with the sentencing purposes set forth in §3553(a)(2):    to reflect the seriousness of the offense; to promote respect for the law and to provide just punishment for the offense; to provide general and specific deterrence; and to provide defendant needed educational and vocational training, medical care or other correctional treatment.

Imprisonment is not necessary to protect the public from further crimes of defendant.  Likewise, imprisonment is not necessary to deter her from further criminal activity.  A sentence of probation, or an alternative sentence not involving incarceration, will satisfy the dictates of § 3553(a)(2).  Ms. Bowling now bears the stigma of felon and

---

[3]In this regard, we note that the pending amendments to the guidelines manifest some movement towards increased judicial discretion and leniency, including moving Level 13 from Zone D to Zone C.

society's opprobrium therefore. A probation or alternative sentence, with conditions and restitution, properly reflects the seriousness of the offense, provides just punishment and will promote respect for the law. Finally, Ms. Bowling does not need vocational training, medical services or other correctional treatment.

B.    Collateral Consequences

In considering a variance  sentence the Court may, and should, give weight to collateral consequences a defendant will suffer. Collateral consequences to Ms. Bowling include:

1.    She lost her state job. She was earning approximately $53,000 per year, and received state fringe benefits, including health insurance.

2.    She has greatly diminished prospects for future employment commensurate with her education, experience and skills. Since resigning from WFWV she has applied for many jobs, including jobs commensurate with her skills and experience (see Exhibit B) and entry level, low wage jobs. She was offered employment with Wal-Mart and Tim Horton's, a "quick service" restaurant chain, where she worked from September 2009, at $7.50 per hour, with no benefits (she started at $7.25 per hour), until April 13, 2010, when she commenced employment with Carey, Scott, Douglas & Kessler, PLLC, as a file clerk. All other employment applications were rejected.

3.    She will lose the vested pension she earned from seven years of employment with the State of West Virginia (see W. Va. Code §5-10A-1,2 ); and may lose the pension she earned from 10 years as a public school teacher.

4.    The West Virginia Ethics Commission initiated a complaint against Ms. Bowling on March 26, 2010. That proceeding likely will result in a public order with findings

of violations of the state ethics laws, and may include restitution and monetary penalties up to $5,000 for each ethics violation.  W. Va. Code §6B-2-4(r)(1)(D).  The Commission also routinely seeks a prohibition on future employment by state, county and municipal governments, further reducing her future prospects; and

     5.     Ms. Bowling has suffered the loss of her good reputation and standing in the community.

     C.     The real loss as established by the evidence is $11,663.69.

     WFWV awarded a grant to Comar of up to $100,000, of which $87,443.75 was drawn down.  WFWV audited the grant, and  found a total of disallowed costs of $11,663.69.  WFWV's auditors and management found allowable costs to be $68,041.40.  PSR ¶ 30.  The following costs were disallowed:    $5,000 paid to Martin Bowling; $5,000 paid to Christine Gardner; and a total of $1,633.69 in disallowed expenditures, related to training and entertainment costs invoiced to the grant by various Comar employees. PSR ¶ 28.  Although WFWV concluded that the "record keeping and backup for all expenses submitted by Comar lacked reliability," WFWV has not disallowed any specific costs beyond the $11,663.69 previously disallowed.[4]

     The evidence demonstrates that Ms. Bowling did not subjectively intend to cause an actual loss to the state, and certainly not a loss of $87,443.75.  Rather, she intended that a project consistent with the goals of the State Set-Aside Program be funded

---

[4]Defendant agrees with the probation officer's application and calculation of the U.S.S.G. loss at $100,000 "[f]or guidelines purposes. . ." PSR ¶ 30.  The U.S.S.G. loss figures are based on the defined terms of "actual loss" and "intended loss," which further involve concepts of reasonably foreseeable pecuniary harm, and the like.  In deciding whether to vary below the Sentencing Guidelines, however, the Court is not confined to the guideline loss definitions, when considering the financial injury or harm to the victim, based on the real facts supported by the evidence.

and fully executed.  Viewed from this perspective, the victim's loss is greatly reduced, and the court accordingly should impose a lesser sentence.  The grounds set forth below concerning restitution also support defendant's request for a variance because, as shown, the real loss was much lower than the guideline calculations reflect.

<u>RESTITUTION SHOULD BE IMPOSED IN THE AMOUNT OF $11,663.69, THE TRUE ESTABLISHED LOSS TO WORKFORCE WEST VIRGINIA.</u>

The Probation Officer has found the amount of restitution to be $11,633.69. PSR ¶ 82.  Defendant agrees.  However, WFWV has submitted a Declaration of Victim Loss seeking $87,150, the total draw down by Comar.  As discussed below, the Probation Officer's determination of restitution is correct.

Auditors of WFWV audited Comar's finances and activity for the grant, and concluded the following:   $87,443.75 funds were drawn down by Comar; of the draw down, $68,041.40 were allowed as costs; and $11,633.69 was disallowed.  As far as defendant can determine, the total disallowed costs of the grant, to date, are  $11,633.69. Nevertheless, WFWV now seeks restitution "in the full amount of $87,150."  WFWV seeks to recover this "full amount" based on its voluntary decision to reimburse the U.S. Department of Labor (USDOL) for all expenditures in the grant.  We do not question WFWV's authority to take that action. WFWV's decision, however, was made (a) without additional auditing (beyond disallowing $11,663.69), but rather on its decision simply to pay USDOL the entire amount;  and (b) without the benefit of an "audit and review process" by the U.S. Department of Labor, which may have resulted in findings and conclusions consistent with WFWV's own  (*i.e.*, disallowed costs of $11,663.69).

The specific bases disclosed by WFWV for its decision to reimburse USDOL are:

(1) the "consulting services" payments of $5,000 each to Martin Bowling and Christine Gardner. These payments were returned to Comar, but Mr. Hendershot has not remitted the same to WFWV, and instead has retained the funds;[5]   (2) guilty pleas of Albert Hendershot and Martin Bowling; (3) that Hendershot and Martin Bowling "both admitted that no work transpired [on carrying out the project] in regards to" the $10,000 paid for "consulting services"; (4) an allegation that "Mary Jane Bowling had made the statement to the effect that if it had not been for her intervention, the State Set Aside grant to Comar, Inc. would not have been awarded"; (5) that some Comar employees falsified time sheets; and (6) "a Comar, Inc. employee" alleged that Hendershot improperly disposed of a camera. Declaration of Victim Losses by WFWV, February 17, 2010. It thus appears that WFWV has voluntarily reimbursed USDOL 100% based partly on the illegal diversion of $10,000 for consulting fees, other unsubstantiated allegations, and its generalization that Comar's record keeping "lacked reliability." Whether substantiated or not, these other bases are not related to Ms. Bowling.

Again, we do not question the authority of WFWV to reimburse USDOL, but submit that WFWV's decision was not only voluntary, it was expedient:

> . . .we concluded that the record keeping and backup for all expenses submitted by Comar lacked reliability. We discussed the best course of action to resolve the Comar grant with our United States Department of Labor liaison, . . . .   *We agreed the most efficient plan to get this issue behind us would be for WorkForce West Virginia to fully reimburse DOL with state funds for the Comar grant.*   Otherwise, the federal agency would incur the expense of conducting its own audit and review process. As a result, WorkForce West Virginia. . . .agreed to incur the full amount of the Comar grant.

---

[5]Ms. Bowling provided $5,000 to Mandi Felty, which she in turn paid to Comar.

11

*Id.* (emphasis supplied).

The result of WFWV's voluntary and expedient action is that no "audit and review process" has been conducted by USDOL. The results of a prospective or hypothetical USDOL are speculative. There is, however, no compelling reason to conclude that DOL auditors would have made findings different from those off WFWV, *i.e.*, that $11,633.69 comprises the total amount of wrongfully applied grant funds.[6]

For restitution purposes, WFWV and the State have been wrongfully deprived of $11,663.69. Whether USDOL views the matter differently has not been shown. Based on this evidence, a judgment of restitution against Ms. Bowling for $87,150 is not proper.

## CONCLUSION

Assuming, *arguendo*, Ms. Bowling is lawfully subject to a restitution order in the amount of $87,150, we respectfully submit that the Court should consider the true dollar loss to federal and state agencies of $11,663.69 as shown by the evidence, to be an additional factor justifying a variance below the sentencing guideline range. In any event, Ms. Bowling's history, personal characteristics, criminal record, and the facts of this case justify a variance sentence of probation or an alternative sentence without incarceration.

---

[6]The reported allegations concerning Hendershot's disposition of a camera and falsification of time sheets by Comar employees have not been demonstrated. More importantly, for sentencing purposes, Comar's conduct related to the camera and time sheets was done without Ms. Bowling's knowledge or involvement.

MARY JANE BOWLING

By Counsel,

Michael W. Carey, WVSB No. 625
Carey, Scott Douglas & Kessler, PLLC
901 Chase Tower
707 Virginia Street, East
P.O. Box 913
Charleston, West Virginia 25323
(304)345-1234
mwcarey@csdlawfirm.com

13

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

UNITED STATES OF AMERICA,

      PLAINTIFF,

v.                            **CRIMINAL ACTION NO. 2:09-00208**

MARY JANE BOWLING,

      DEFENDANT.

## CERTIFICATE OF SERVICE

I, S. Benjamin Bryant, counsel for Defendant Mary Jane Bowling, do hereby certify

that on this the 14th day of June, 2010, I have filed the "Defendant's Sentencing

Memorandum and Request for Variance" using the Court's electronic filing system which

will provide notice of such filing to the following:

        Thomas C. Ryan, AUSA
        Office of the United States Attorney
        P.O. Box 1713
        Charleston, WV 25326-1713

Michael W. Carey, WVSB No. 635